Argued September 26, reversed December 18, 1957

# UNANDER *v.* PASQUILL ET AL
## 319 P. 2d 579

*William E. Dougherty,* Special Assistant Attorney General, Portland, argued the cause for appellant. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*John P. Bledsoe,* Portland, argued the cause for respondents. With him on the brief were Andrew Koerner and Koerner, Young, McColloch & Dezendorf, Portland.

WARNER, J.

Sig Unander, as State Treasurer, appeals from an order of the Circuit Court for Multnomah County, Probate Department, overruling the Treasurer's objections to the court's determination of the inheritance tax in the estate of Caroline A. McKinnon, deceased. John Pasquill and Carolyn Kamm Jackson are Mrs. McKinnon's executors.

The decedent left a net taxable estate of $802,810.51. After due allowance for a charitable bequest of $10,000 the tax assessed pursuant to ORS 118.100(1)[1] amounted to $55,357.80.

Specific legacies totaling $235,625 distributed in varing amounts were left to twenty persons, none of whom were lineal descendants of the deceased, but all of whom were "collateral" or "nonrelatives" of the

[1] "ORS 118.100 **Rates of tax.** (1) The rates of tax on all estates shall be as follows:
[Here follow the rates]
The above tax on the estate shall be in full for all inheritance tax on any devise, bequest, legacy, gift or beneficial interest to any property or income therefrom which shall pass to or for the use or benefit of any grandparent, parent, spouse, child or stepchild or any lineal descendant of the deceased.

testatrix. All were liable for the payment of the tax determined under the provisions of ORS 118.100(1), hereinafter called the "basic tax," and after apportioned as their respective shares under ORS 118.110②. In addition thereto, these legacies were liable to such taxes chargeable against them under ORS 118.100 (2) and (3), hereinafter called the "collateral tax," according to the status of the legatee's relationship to the decedent. The taxes on the specific legatees determined as their proportion of the basic tax paid, totaled $16,511.31. The collateral taxes on the specific legacies amounted to $12,866.47. No issue is raised concerning the foregoing figures.

Mrs. McKinnon's will included the following article:

"NINTH: I direct my executrix and executor hereinafter named to treat as an obligation of my estate and to pay, without apportionment thereof, all estate, inheritance or other death taxes or duties imposed and made payable by reason of my death by the laws of the United States or of any state, territory or country."

Were it not for this testamentary provision, each specific legacy would have been distributed less the amount of its burden for its share of the basic tax

---

"(2) When any inheritance, devise, bequest, legacy, gift or the beneficial interest to any property or income therefrom shall pass to or for the use or benefit of any brother, sister, uncle, aunt, niece, nephew or any lineal descendant of the same, in every such case, in addition to the tax levied on such estate, such person shall pay an inheritance tax as follows:

[Here follow the rates]

"(3) In all other cases, in addition to the tax levied on such estate, such person, body politic or corporate shall pay an inheritance tax as follows:

[Here follow the rates]

"*  *  *  *  *"

② "ORS 118.110  **Tax rate applicable to net estate after allowing deductions; apportionment.** The rates of tax prescribed in subsection (1) of ORS 118.100 shall be applied to the entire net estate remaining after allowance of the deductions specified in ORS 118.070 and the tax thus computed shall be apportioned to each distributive share of the estate in the ratio which each distributive share bears to the net estate. However the proportion of such tax found to be apportionable to devises, bequests, legacies or gifts which are exempt under ORS 118.020 shall not be collected."

paid on the estate and the collateral tax charged against it. But following the direction of the Ninth article, the taxes thus paid for each of the several specific legatees were correctly treated as an additional gift or taxable benefit accruing to each specific legatee. Each specific legacy in the amount designated by the will, plus its share of the basic tax and collateral tax paid thereon, established the amount for the separate determination of the collateral taxes chargeable against each of such legacies. The process thus employed is better clarified by illustrating its application to the specific legacy of $2,000 payable to Mary R. McKinnon, a sister-in-law of the decedent:

| Legacy per Will | Added Collateral Tax | Added Proportion of Basic Tax | Value of Total Bequest | Collateral Tax Paid |
|---|---|---|---|---|
| $2,000 | $ 80. | $145.19 | $2,225.19 | $ 98.02 |

Under the foregoing formula the legatee named will receive her legacy in the net amount of $2,000.

The correctness of the computations of the taxes charged against each of the several specific legacies according to that formula is accepted by the State Treasurer and the executors.

The foregoing method of treating taxes paid pursuant to the Ninth article as an additional benefit subject to tax is supported by a wealth of authority: *Bouse v. Hutzler,* 180 Md 682, 26 A2d 767, 141 ALR 843; *In re Bowlin's Estate,* 189 Minn 196, 248 NW 741; *In re Irwin's Estate,* 196 Cal 366, 237 P 1074, 1077; *In re LeValley's Estate,* 191 Wis 356, 210 NW 941; *Textor v. Textor,* 170 Md 128, 183 A 247, 248; 85 CJS 1033, Taxation § 1182; 28 Am Jur 137, Inheritance, etc., Taxes § 280.

■ In *Lairmore v. Drake and Borough,* 185 Or 239, 202 P2d 473, at pp 245-6, the court defined the word "benefit" as that which contributes to advantage or profit. Black's Law Dictionary (3d ed) calls it a pecuniary advantage or profit. Also see Restatement 12, Restitution § 1b. We deem that the payment in whole or in part from the funds of an estate of inheritance taxes on any specific legacy a further taxable benefit when such payment is directed by a decedent's will.

The issues on this appeal present but one problem, i.e., the correct method for determining the collateral tax to be paid on the residuary legacies. The executors contend the respective shares of the basic tax chargeable against the value of the residuary legacies should be first deducted and the collateral tax assessed on the thus diminished amount. To the contrary, the State Treasurer takes the position that the collateral taxes against these gifts must be determined without such deduction and in substantially the same way the specific bequests were taxed.

The residuary clause of the testament is found in the Seventh article and, so far as pertinent, reads:

"SEVENTH: All the rest, residue and remainder of my estate I give and bequeath as follows: Two-thirds (2/3) to my niece, CAROLYN KAMM JACKSON, and one-third (1/3) to my niece, KATHRYN KAMM HAWKINS. * * *"

In the interest of simplification, we will from this point on refer to the residuary gift as a single gift to one person.

We will first reduce to a condensed mathematical calculation the respective positions of the respective parties.

The treasurer claims the net value of the residuary estate should be computed as follows:

| | | |
|---|---|---|
| Total taxable value of estate | | $802,810.51 |
| Less: | | |
| Net legacies to others | $235,625.00 | |
| Collateral taxes paid for others | 12,866.47 | |
| Basic tax paid for others | 16,511.31 | |
| Total benefits to others | | 265,002.78 |
| Balance taxable to remaining or residual legatees | | $537,807.73 |

The executors, to the contrary, argue that the net value of the residuary estate should be figured in the following manner:

| | | |
|---|---|---|
| Total taxable value of estate | | $802,810.51 |
| Less: | | |
| Net legacies to others | $235,625.00 | |
| Collateral taxes paid for others | 12,866.47 | |
| Total basic tax | 55,359.59 | |
| Total | | 303,851.06 |
| Balance taxable to remaining or residual legatees | | $498,959.45 |

We will call the Treasurer's computation Formula No. 1 and that of the executors Formula No. 2. We

focus attention on the amount of $537,807.73 in Formula No. 1 as the figure upon which the Treasurer would base the collateral tax of the residuary beneficiaries. Also note the figure $498,959.45 in Formula No. 2 which the executors would employ for the same purpose.

■ The residue of an estate "is what remains after paying the legacies of the will and the debts and expenses of administration. It includes the whole estate, of every description, left by the testator, subject to all deductions required by law or *by direction of the testator*." (Emphasis ours.) *In re Shepherd's Estate,* 152 Or 15, 34, 41 P2d 444, 49 P2d 448. This necessarily includes all disbursements made to taxes by direction of the testatrix under the Ninth article of the McKinnon will before the value of the residuary estate can be determined.

The foregoing concept of what constitutes a residuary estate forecloses a determination of its value until after all deductions required by law or directed by the testator are fully satisfied. (152 Or 34) As is usual, in the instant matter it is the only fund of the estate yet remaining in the executors' control after the fulfillment of the testator's directions as to the residual bequests. In the ordinary course, and in the absence of any tax-paying provision comparable to article Ninth of the decedent's will, the figure thus determined to be the value of the residuary estate is of necessity the only basis for the determination of a residuary legatee's obligation to pay his proportion of the basic tax computed in accordance with ORS 118.100(1) and the collateral taxes, if any, due under subsections (2) and (3) of that section.

The point of departure between the Treasurer and

the executors lies in their respective methods for arriving at the value of the residuary estate. Whereas, the Treasurer allows the executors a deduction of $16,511.31 for basic taxes paid in behalf of the specific legatees (see Formula No. 1), the executors claim a credit of $55,359.59 for all basic taxes paid by them (see Formula No. 2). This latter amount represents the entire amount paid on this estate as the basic tax. $38,848.28 of the latter sum is that part of the basic tax apportioned to the residuary estate on its value of $537,807.73, as determined by the Treasurer (see Formulas No. 1 and No. 2) and is the exact difference between the Treasurer's valuation of the residuary estate and the valuation which the executors admit, i.e., $498,959.45.

This difference in the residuary value results from executors' method of calculating the collateral tax on the residuary estate. In brief, their manner of determining that tax is to arbitrarily employ the basic tax as an allowable deduction against the value of the residuary estate and then tax the balance thus attained. Thus:

| | | |
|---|---|---|
| (1) | Value of residuary estate per Treasurer (see Formula No. 1, supra) | $537,807.73 |
| (2) | Less residuary estate proportionate share of basic tax | 38,848.28 |
| (3) | Value of residuary estate per executors (see Formula No. 2, supra) | $498,959.45 |

The unique and anomalous attribute of the executors' argument is that they ignore and repudiate, in so far as the computation of the collateral tax on the residuary legacies is concerned, the very method used

in arriving at the amount of the collateral tax chargeable against the specific gifts to the specific legatees. There they did exactly what is proposed by the State Treasurer for the tax on the residuary legacies, that is, they apportioned the basic tax on the value of each specific legacy and then assessed the appropriate collateral tax, but without first deducting the amount of its share of the basic tax. See exemplification of method applied to the specific legacy of Mary McKinnon, a sister-in-law, appearing earlier in this opinion.

To depart from the method of tax computation there applied would not only accord to the residuary legatees a preferential benefit not enjoyed by the specific beneficiaries, but would also place us in the position of giving approval to a method for the assessment of collateral taxes not countenanced by law.

The executors seek to justify their position by arguing:

> "It is clear that the sum on which the State Treasurer seeks to tax the residual legatees is an amount which was paid to the State Treasurer as basic inheritance tax. *It is clear that the residual legatees never received any part thereof.* It is clear that under the terms of the decedent's Will *they never had* a right *to receive* any part of it or to have it applied for their benefit." (Emphasis ours.)

The argument is untenable. It is also contrary to the plain legislative intent. The tax paid, both basic and collateral, is initially a part of the bequest received. Before payment, it is an element of the gift or inheritance coming to them from the testator. True, they never have the whole amount in hand at any one time,

but ORS 118.240® makes the executor or administrator, as the case may be, the temporary custodian of that part reserved for inheritance taxes and the section mentioned mandates that the amount thereof be deducted from the inheritance of given legatee and thereafter paid by the executor or administrator directly to the State Treasurer. In so doing, the decedent's representative is the agent, so to speak, for the payment of a tax debt for which the beneficiary is personally liable under ORS 118.210® and in so functioning, renders the legatee a further benefit. As said by Mr. Justice HARRIS in *In re Inman's Estate,* 101 Or 182, 199, 199 P 615, 16 ALR 675: "The value of the property received is one of the determining factors in the measurement of the amount of the tax. It is true that the executor or administrator is required to pay the tax, but the payment is nevertheless based on the value of the interest which the successor is entitled to receive *and which in contemplation of law he has received.*" (Emphasis ours.)

The collateral tax on the instant residuary estates, taken as they are by the nieces of the testatrix, are assessed pursuant to ORS 118.100(2) on any "* * * legacy, gift or the beneficial interest to any property

---

® "ORS 118.240 **Delivery of property prior to collection of tax by personal representative prohibited.** Any administrator, executor or trustee having in charge, or in trust, any property for distribution, embraced in or belonging to any inheritance, devise, bequest, legacy or gift, subject to inheritance tax shall deduct the tax therefrom, and within 30 days thereafter pay the same to the State Treasurer, as provided in this chapter. If such property is not in money, he shall collect the tax on such inheritance, devise, bequest, legacy or gift upon the appraised value thereof from the person entitled thereto. He shall not deliver, or be compelled to deliver, any property embraced in any inheritance, devise, bequest, legacy or gift, subject to tax under this chapter, to any person until he has collected the tax thereon."

® "ORS 118.210 **Liability for tax.** All heirs, legatees, devisees, administrators, executors and trustees, and any grantee or donee under a conveyance or gift made during the grantor's or donor's life if the conveyance or gift is subject to tax under ORS 118.010, are, respectively, liable for any and all taxes mentioned in ORS 118.010, with interest thereon, until the same have been paid as in this chapter provided."

or income therefrom  \*  \*  \*  in addition to the tax levied on such estate."

No provision in that section or elsewhere in our inheritance tax laws is made for any deductions from the value of any inheritance for the amount of the basic tax apportioned to it before computing the collateral tax due as the executors would have us do. The collateral tax is in no sense a tax upon a tax, but an amount of an *additional tax*, computed on the same thing of value and at the same value upon which the basic tax is apportioned, but at a different rate.

■ All tax deductions are a matter of legislative grace, to be strictly construed against the taxpayer. *Puget Sound Bridge & Dredging Co. v. State Unemployment Compensation Commission,* 168 Or 614, 126 P2d 37 (1942) ; *Keyes v. Chambers,* 209 Or 640, 307 P2d 498 (1957). In fact, if there is even a doubt whether the legislature granted a deduction or exemption, the presumption is that the legislature did not so provide and we have so held. "No exemptions should be allowed, therefore, unless they are plainly warranted, and the intent of the legislature to exempt must be clear beyond a reasonable doubt.  \*  \*  \*  An intention to exempt will not be implied from language which is susceptible of any other reasonable interpretation." *Allen v. Multnomah County,* 179 Or 548, 552-53, 173 P2d 475.

■ We, therefore, hold that the basic tax should not be deducted before figuring the amount of collateral tax to be paid.

The executors assert that if the method of computation used by the State Treasurer is adopted by this court it will result in a nonuniformity of taxation which will violate Article I, § 32 of the Oregon Constitution providing for uniformity of taxation. It is

interesting to note, however, that respondents do not cite any cases to uphold their point, but instead rely only on hypothetical examples not in point.

■ This court has passed on the constitutionality of the Oregon inheritance tax before. We need cite only one case to uphold the Treasurer's position here. In *In re Estate of Heck,* 120 Or 80, 250 P 735, at page 85, the court sets forth some figures based on the identical theory propounded by the executors in the instant matter and concludes by holding that the tax is constitutional. We do not find that the legislature has discriminated between legatees of the same class in such a way as to destroy uniformity of taxation. Also see *Cabell v. Holman,* 144 Or 127, 134, 24 P2d 1; *Keyes v. Chambers,* supra, at pp 663 and 664.

The order of the circuit court will be reversed and a new order entered in conformity with this opinion.